Please call our final case. The final case, number 181572, Minnesota, United States v. Kevin James Petroske. All right. Mr. Hunter, you may proceed when you're ready. May it please the court, your honors, Ms. Surdich, the appellant Kevin Petroske is asking the court to reverse the district court's denial of a motion for judgment of acquittal. And the reason that he's asking that is that he asserts that his surreptitious videotaping of minors does not constitute either the attempted production or the production of child pornography. And the reason he asserts that is that he asserts that his intent in engaging in these activities was to see and record minors engaged in innocent nudity and conduct unrelated to the lascivious display of genitals under the plain language of the applicable statute. Now, while the district court denied the motion for judgment of acquittal, it did so because it asserted it was constrained by the Johnson and related cases. It said that in its view, I'm paraphrasing, if it had looked at this ab initio, it might consider that this does not fall within the purview of the statute. But because of Johnson v. United States and related cases, it felt it had to apply that and it upheld the convictions. Now, Johnson is a case in which a coach was videotaping, I think they were weightlifting minors who were weighing in and had to weigh in either in underwear or unclothed, and the private parts. And in that case, the conviction was subject to a judgment of acquittal, but then the Eighth Circuit reversed and reinstated the conviction on the basis that innocent conduct on the child pornography. Johnson is actually a little bit distinguishable from this case in that in Johnson, as in some of the other cases, there was some posing, if you want to call it that, of the minors in the sense that or setting up the scene in the sense that the coach in that case prepositioned the cabin, the camera, where he knew the person's weighing in would be located and so could focus on their genitals. Now, in Mr. Petrovsky's case, his conduct is what you might call pure or mere video voyeurism. He's simply using a camera to record what is seen. The minors were unaware and there's no inference that they were engaged in any kind of conduct related to sex or inviting sex or suggesting sex or anything of that nature. Now, the judge indicated that he were not for this Eighth Circuit authority would have considered granting a judgment of acquittal, even considering that the video had this caption, this video, the oral caption, this kind of running commentary showing clearly that Mr. Petrovsky was excited by this. That's not a relevant consideration, but something that got into the case. But notwithstanding that, the judge asserted that on first look, he might have determined that this was not child pornography. That's the issue of the judgment of acquittal, I think, very narrowly, even applying Johnson. Well, let's go a little further with that. How do you suggest that we deal with the presence of Johnson, then, that seems to control this issue, which the district court thought so? I would say very narrowly. We can't overrule the decisions of another panel. I understand that, yes. And if that's the view the court takes, it could still express its reservations as the district court did. But looking at Johnson very narrowly, there was some setting of the scene. There was some posing of the children. Not so in Mr. Petrovsky's case. So it's narrowly distinguishable, but more broadly, we suggest that it's a law that should be reversed because it goes beyond the plain language of the statute. Secondly, our motion is for a new trial. And here, we submit that there was something of a perfect storm of unfair prejudice to Mr. Petrovsky. And the district court addressed this. A lot of the cross-examination of Mr. Petrovsky had to do with his sexual predilections. That's really not a permissible concern. Counsel did not object, but counsel's failures still permit this court to make a determination that there was plain error there or that these are extraordinary circumstances. Counsel, the district court gave a curative instruction, is that correct, on this issue? Yes. And I believe the government, in an attempt to cure any error if there was any, also in a sense in their closing, emphasized what the district court had instructed the jury. Is my recollection accurate there? I believe so, yes. But the government also went on to make other arguments that were unfairly submitted to be unfairly prejudicial to Mr. Petrovsky. One has to do with the admission of the caption. We don't dispute that that's part of the video recording. The issue is really whether it's unfairly prejudicial because it focuses on his predilection, not something else. Counsel, do you concede that it's probative evidence? And what issue is it probative to? I suppose it's probative on whether it would be an intent to create a sexual object. And you would distinguish that then from his own sexual interest? The cases do, and certainly it focuses highly on his own sexual interest. But the admission of the caption then allowed the government to really make an argument that a caption alone can create child pornography. And in closing argument, defense counsel made an argument that if you are going to criminalize the mere nudity in essence, then really a family photo of a kid in a bathtub could constitute child pornography. Under DOST, if you wanted to go crazy, there's nudity, there's a bathroom setting. Those are DOST factors. Of course, nobody thinks that that is a basis for a conviction. But the government went on to make the argument, and this is on the transcript at page 352, saying, if that in the bath photo, if the producer intended it to be sexual, if that parent happened to be a pedophile and a producer of child pornography, and if that parent, in taking the photo or video, said the things and did the things that the defendant did in this case, it would absolutely be child pornography. So by the government's argument, you could take the most innocent family photo, add some lewd caption to it, and you've got child pornography. The defense disputes that perfectly innocent conduct becomes child pornography by virtue of a caption. Finally, in closing argument, the government argued that even though the minors in the visual depictions were, in the government's words, innocent girls doing normal everyday things, the jury could convict Mr. Petroski of production and attempted production of child pornography because, again, in the words of the government, you know it when you see it. Now, this is a very improper argument because it appeals to the jury not applying the standard of law that the court gives to it, but applying its own gut feeling, its own biases, its own prejudices. And this ties exactly into what the court said about the government's inquiry in cross-examination of Mr. Petroski that they're trying to make it look like. Did the government address the eight factors that this court applies in its closing argument, counsel? I believe so, yes. At any rate, these things taken together could well have caused the jury, because they would hate Mr. Petroski regardless of whether they felt he had committed those offenses or not, to use their gut, vote their feelings, apply the you-know-it-when-we-see-it-and-we-hate-it-so-we're-going-to-convict kind of theory, and that taken with the other things in this case create a substantial likelihood that the jury ruled on that basis rather than on the facts and law. And there again, even absent counsel objection in closing statement, those, the cumulative effects of those things in this case in particular when it was thought so hard to give Mr. Petroski a fair trial in the first place came together to create the plein air, the extraordinary circumstances that would be a basis for the court granting relief in this case. And I'll reserve the rest of my time. Very well. Ms. Sertich? You may proceed when you're ready. Thank you, Your Honors. My name is Manda Sertich. I represent the United States and served as trial counsel for the government in the case of United States v. Kevin Petroski. As Mr. Hunter noted, his argument is that this court got it wrong in Horn, Johnson, Ward, and Locey when it held that license, that a lascivious exhibition is not the work of the child whose innocence is not in question, but of the producer or editor of the video such that images of children acting innocently can be considered lascivious if they are intended to be sexual. I believe his argument here does not have a place for the type of narrowing that he's suggesting of Johnson. But I'd also like to clarify a few points about the record. First, Mr. Hunter stated that it was Mr. Petroski's intent to see and record minors engaging in innocent conduct. This is contradicted both by Mr. Petroski's trial testimony and by those audio statements that are in the videos that are at issue here. In his testimony, and this is in the government's brief, he talked about the fact that it was his goal to see them naked to display their genitals. He would be thrilled to see that. It would have been his ultimate goal to see them engage in sex acts. And as such, while he wasn't involved in zooming the camera as in Johnson to zoom in on an area where he thought the pubic area would be displayed, he laid in wait on his own testimony for hours, night after night after night outside of the same houses waiting for these minor girls to take off their clothing so that he could record them. And so the government has an issue in the first instance with saying that the defendant's intent was just to observe and record innocent conduct. In terms of the argument about the inclusion or non-inclusion of the audio and Mr. Hunter's argument that the government is saying here that a caption alone can create child pornography, that is also not the government's argument. As instructed in the model instructions, the full context of these images and videos should be taken into account. And the audio is certainly part of that here, which can be called a caption or it can be called anything else. But also in this circuit, it has been held in, I believe, both Johnson and Ward, that extrinsic evidence can be considered when determining the intent of the defendant because they've held child pornography collections to be indicative of the defendant's intent. So counsel, I think some of the evidence we've been talking about here, including the audio, I think even defense counsel concedes it's probative. The question I'm wondering, is it unfairly prejudicial? And particularly in the context of the Kemmerling case that instructs that the defendant's sexual interests are not, and I'm going to botch the exact language, but the focal point of the analysis. Could you address that issue? Because I think myself, I'm a little concerned or a little confused about the distinction between sexual interests and sexual intent and the nature of the evidence that the government produced in this case, introduced in this case. Yes, and I think the first point is that those two things aren't mutually exclusive. Someone can have the intent to capture the lascivious conduct even though it doesn't appeal to their sexual interest. And I think the example I used in the brief was that someone could be filming child pornography for financial gain, which is not the case here, who does not have that kind of interest, but that they wouldn't have that sort of sexual interest. And I understand the concern. So that's the easy case, right? In this case, it's the more difficult case when you have evidence that suggests conclusively, perhaps, sexual interest and it's given to the jury even though there's an instruction. And I understand there's an instruction that says you're not to consider it, but that's pretty powerful evidence. This case is easy for a different reason in addition to the one I just mentioned, and that is that Kemmerling did not involve charges of attempt to produce child pornography, and this case did. And so the defendant's intent is not only part of the DOS considerations, but it's an element of the crime that the government needs to prove in proving up the case. And in this instance, all of the videos were charged as attempt to commit production of child pornography, and then three of them were additionally charged with the completed crime. Now, the government believes that those three do constitute lascivious exhibition of the genitalia. But in addition to that, on attempt alone, the proof of that intent becomes very important. The other thing I would mention, because it's not in the government's briefing, but based on these arguments, it's clear that it's important to me, is that at the close of the trial, both the government and the court supported a special verdict form that would have asked the jury to determine for those three videos whether they found guilt as to just attempt or as to attempt and production or neither. The defendant said that was not his preference. He wanted that to be included in one question. And the court engaged in a lengthy colloquy to make sure that the defendant understood the decision he was making by having those included together. And so while the government is unable to stand here today and say that for sure the jury convicted on the completed crime, we're not able to do that based on the defendant's decision in this case. The other thing I wanted to mention in response to Mr. Hunter's comments, he talked today again, and he talked in his briefing a few times about the fact that the government said in closing, you know it when you see it. And that's true. That was said in the closing. But with all due respect to Mr. Hunter, I believe that's a little bit of a mischaracterization of what that closing argument looked like. That statement, you know it when it see it, directly followed a very lengthy discussion of the law and the DOST factors as set forth in the jury instructions. And what counsel for the government was telling the jury as is clear in the transcript is that after considering the law, it was not difficult to determine that the videos defendant recorded were child pornography. And getting back to your question, I wanted to get back to your question about the probative versus prejudicial nature of those statements on the audio recordings. The Johnson and Ward cases both hold that sort of extrinsic evidence such as a child pornography collection or statements of a defendant are relevant to determining whether a visual depiction was intended to cause a sexual response in the viewer. But defendant's statements in this case are not even extrinsic evidence. They're intrinsic evidence of the crime. And what I was trying to think of when Mr. Hunter was talking was if a bank robber who failed at his attempt to rob a bank said something along the lines while he was committing the offense of, you know, I'm going to use all this money to go buy a brand new car. Of course, that's incredibly prejudicial. But it's also incredibly probative of what his intent was when he walked into the bank. The government believes that to take that audio out of the video is to present something to the jury that he did not create. The government's asked us in a footnote to consider clarifying, I think, the sixth factor. Could you articulate what the government's concern is related to? I think, which is the intent issue, which is, you know, at least on the actual production counts was the basis of my concern on the introduction of the audio. It looks like the United States has some sort of concern about our prior cases and about the model jury instructions. Could you articulate specifically what that concern is and if the government has a position on what the court should do about it? Yes, and I'll say the government's concern arises from the fact that the district court raised this. We believe that there's not a true conflict here in the law and I can explain that more. There's arguably, according to the district court, inconsistent opinions or dicta because it can be seen as difficult to reconcile how the court's holding in Kemmerling, which says that the jury should not consider whether this visual depiction causes a sexual response in the viewer on the one hand and reconcile that with Johnson and Ward which hold that extrinsic evidence regarding defendant's sexual preferences that provide insight into his reason for making the recordings were relevant on the other. And the government's position is that that sixth DOS factor is an objective question of whether the alleged child pornography is intended to elicit a sexual response in a viewer and in this case as we've seen in Loci and other cases it's a sexual response in a pedophile viewer obviously not to people of the general public and while the 8th circuit has clearly said in Kemmerling the question isn't whether it was intended to elicit a sexual response in the producing defendant which is a subjective test the government's position is that the evidence of a pedophile defendant's sexual response to such material that can be admitted as evidence that objectively the alleged child pornography was intended to elicit a sexual response in a viewer and again I would note the distinction between Kemmerling and Johnson is the distinction between a case that involves production and attempted production I would also note the government agrees however that the appropriate interpretation of the law here is that child pornography should be deemed as such if children are acting innocently with no anticipation of sexual conduct where the defendant is the one who is sexualizing them so in the Lossie case where the defendant took pictures of a clothed sleeping minor with his genitals near the minor's face the defendant made that same argument the defendant is making here that the statute requires some sort of active participation by the minor or active sexual conduct to an unknowing minor by an adult defendant and this court clearly rejected that argument noting that the jury could find that the defendant used that minor victim as a sexual object in those photographs as the government believes the defendant did here in this case as well the defense also encouraged this limited  and the government would note that even under that case statements of the defendant are considered admissible as part of the limited context in determining whether there was an intent to create a sexual object in those photographs and this court similarly held that a reasonable jury could conclude that surreptitiously recorded videos of teenage minor females disrobing and weighing themselves into the victim's  and this court in the nude cannot reasonably be compared to innocent pictures of kids in a bathtub clinical depictions or works of art and I think based on the description set forth in the government's briefing that is a very clear distinction in this case as well the same as it is in Johnson and finally I will note that other circuits have reached the same holdings including the 9th 10th and 11th circuits have similarly held that lascivious exhibition can be created by an individual who photographs a minor and later edits a depiction even when it's just a child behaving as  child and so I just wanted to note for the court that wasn't objected to at sentencing so the standard is plain error based on the sparse record before this court on that issue we don't believe that it can be determined that there's plain error here when it comes to the indigency of the defendant thank you very much thank you counsel how much time does Mr. Hunter have remaining 3 minutes 21 seconds your honor I would just stand on the briefing unless the court has a question I guess not thank you counsel for your argument and the case is submitted does that conclude our calendar for the day it does your honor very well the court will be in recess until 830 tomorrow morning